UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES DARWIN RUNION,

                    Petitioner,                    Case No. 1:14-cv-225

v.                                        Honorable Janet T. Neff

UNKNOWN PARTY #1 et al.,

                    Respondents.
_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Background**

Petitioner Charles Darwin Runion presently is incarcerated at the Bellamy Creek Correctional Facility.  He pleaded guilty in the Kent County Circuit Court to one count of second-degree criminal sexual conduct involving a person under 13, MICH. COMP. LAWS § 750.520c(1)(a). On March 29, 2011, the court sentenced him to a prison term of 20 to 30 years.

Petitioner filed an application for leave to appeal his conviction to the Michigan Court of Appeals.  Through counsel, Petitioner raised the following two issues:

> I.     DID THE PROSECUTION DENY MR. RUNION HIS STATUTORY RIGHT TO A POLYGRAPH EXAMINATION AND DID THIS MAKE HIS GUILTY PLEA INVOLUNTARY?
>
> II.    IS IT AN APPROPRIATE REMEDY FOR DENIAL OF HIS RIGHT TO A POLYGRAPH EXAMINATION FOR THE COURT TO ALLOW MR. RUNION TO WITHDRAW HIS GUILTY PLEA, SET UP A POLYGRAPH EXAMINATION, AND, IF NECESSARY, HAVE A TRIAL AFTER HE TAKES HIS POLYGRAPH EXAMINATION?

(Ex. 1 to Am. Pet., docket #10-1, Page ID#143.)  The court of appeals denied leave to appeal on May 8, 2012, for lack of merit in the grounds presented.  (*Id.*, Page ID#159.)  Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court, raising the same two grounds. The Supreme Court denied leave to appeal on September 24, 2012.

On May 13, 2013, Petitioner filed a motion for relief from judgment in the Kent County Circuit Court, raising the same two grounds presented on direct appeal, together with one new ground:

> I.     DID THE MICH. STATE COURT HAVE JURISDICTION OVER A FEDERAL INDIAN DEFENDANT.

(Am. Pet., docket #10, Page ID#130.)  In a five-page opinion and order issued that same date, the court denied the motion.  (Ex. 1 to Br. in Supp. of Pet., docket #3-7, Page ID##95-99.)  Petitioner

-2-

did not appeal his convictions to either the Michigan Court of Appeals or the Michigan Supreme Court.[1]

In his timely filed habeas application, Petitioner raises all three claims that he presented on direct and collateral review.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

## Discussion

---

[1]Petitioner indicates in his petition that he appealed the decision, but the case number he provides (No. 310944) does not correspond with the Michigan Court of Appeals online docket. *See People v. Cummings*, Docket No. 310944, http://courts.mi.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=310944&CourtType_CaseNumber=2. Moreover, the dates on which he claims that he filed and received the results of the court of appeals decision preceded the date of the trial court's disposition of the motion for relief from judgment.  Further, a search of the public docketing system for the court of appeals reveals that Petitioner filed only one appeal in the state courts, and that is Petitioner's direct appeal of his convictions.  *See* http://courts.mi.gov/opinions_orders/case_search/pages/default.aspx?SearchType=2&PartyName=Runion+Charles&CourtType_PartyName=3&PageIndex=0&PartyOpenOnly=0.  The Court assumes that the error arises from Petitioner's incomplete revision of another prisoner's habeas application form.

Petitioner raises three challenges to his guilty plea: (1) the court lacked jurisdiction to prosecute Petitioner; (2) the plea was involuntary, because the prosecutor constructively denied Petitioner's statutory right to a polygraph examination; and (3) for both reasons, Petitioner should have been permitted to withdraw his plea.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Petitioner's habeas application challenges both the power of the state to bring him into court, *see Blackledge*, 417 U.S. at 30, and the voluntariness of his plea.

I.      Lack of Jurisdiction

As he did in his state-court motion for relief from judgment, Petitioner argues that his convictions are void because the Kent County Circuit Court lacked both personal and subject-matter jurisdiction to charge and convict him. Specifically, Petitioner contends that he is an American Indian who committed his alleged offenses on Indian land. As a result, Petitioner argues, the federal government has exclusive jurisdiction over any crimes he may have committed. In

-4-

support of his argument, Petitioner attaches to his brief a description of the Nottawaseppi Huron Band of Potawatomi and its seven-county service area, together with a copy of the 1821 Treaty between the United States and the Ottawa tribes.  (Ex. 3-4 to Br. in Supp. of Pet., docket ##3-3 to 3-4, Page ID##51-60.)

The trial court correctly and thoroughly addressed Petitioner's argument and concluded that it was patently frivolous:

> Defendant Runion has the burden of proving that he is entitled to relief from the judgment.  See MCR 6.508(D).  Here, Mr. Runion pleaded guilty to one count of criminal sexual conduct in the second degree as a habitual offender, and he agreed to a 20 to 30 year sentence.  By accepting a guilty plea, Mr. Runion waived all challenges to his conviction other than a challenge based on the "right of the government to prosecute the defendant[.]"  See People v New, 427 Mich 482, 495 (1986).  Challenges to the government's right to prosecute include subject-matter jurisdiction challenges and challenges relating to "'the very authority of the state to bring the defendant to trial,' not merely 'the factual determination of the defendant's guilt.'"  People v Harris, 488 Mich 955, 956-957 (2010) (Young, J., dissenting), citing New, 427 Mich at 491.
>
> . . .
>
> At the outset, the Court notes the distinction between subject-matter jurisdiction and personal jurisdiction.  "Subject matter jurisdiction concerns a court's abstract *power* to try a case" and is not subject to waiver.  People v Lown, 488 Mich 242, 268 (2011) (internal quotation marks omitted).  On the other hand, "a party may stipulate to, waive, or implicitly consent to *personal* jurisdiction."  Id.  Here, Defendant Runion asserts that the Court did not have personal jurisdiction over him, but "by entering a guilty plea in the circuit court, and failing to contest the circuit court's jurisdiction, [the] defendant implicitly consented to that court's exercise of personal jurisdiction."  People v Kiyoshk, 493 Mich 923, 924 (2013).  Thus, Mr. Runion's personal-jurisdiction challenge must be denied.
>
> Despite the fact that Mr. Runion labeled his jurisdictional challenge as a personal-jurisdiction challenge, the Court nevertheless considers what appears to be a subject-matter jurisdiction challenge.  See Rothenberg v Follman, 19 Mich App 383, 391 n 14 (1969) ("It is the business of the courts to look through form to substance.")  Mr. Runion argues that the Court did not have jurisdiction to hear this case because he is Native American and the crime was committed in Indian country.  To be sure, the federal government has exclusive jurisdiction over specific criminal

-5-

matters if the crime was committed in Indian country. See People v Collins, 298 Mich App 166, 173-75 (2012). Accordingly, Mr. Runion has pieced together an argument that the Michigan Legislature failed to meet the requirements to retain statehood when it enacted the 1963 Michigan Constitution, so all of Michigan is merely a territory and, therefore, Indian country. Accordingly, Mr. Runion argues that this crime, which was committed at 3753 Groveland Avenue, SW, in Wyoming, Michigan, took place in Indian country. The Court rejects this argument.

Even assuming, *arguendo*, that Defendant Runion's claim to Native American status enjoys factual support, his crabbed view of the state's authority to prosecute him proves to be nothing more than wishful thinking. As an initial matter, Indian land can be converted to "non-Indian fee land," and "once tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it." See Plains Commerce Bank v Long Family Land and Cattle Co, Inc, 554 US 316, 328 (2008). Indeed, even if a Tribe recovers property once ceded to a state by treaty or otherwise, "'standards of federal Indian law and federal equity practice' preclude the Tribe from rekindling embers of sovereignty that long ago grew cold." City of Sherrill, New York v Oneida Indian Nation of New York, 544 US 197, 214 (2005). Therefore, although the State of Michigan comprises vast acreage that was once Indian land, the privately owned real property on which Mr. Runion committed criminal sexual conduct irretrievably lost its character as Indian land long before Mr. Runion perpetrated his criminal acts on that real property. To say that the entire State of Michigan is Indian country points up the absurdity of Mr. Runion's theory. If he is correct, no prisoner is validly being incarcerated by the State of Michigan. Mr. Runion's argument in this regard is as frivolous as it is novel.

(5/13/13 Cir. Ct. Ord., docket #3-7, Page ID##95-99 (footnote omitted).)

The trial court's disposition of Petitioner's personal-jurisdiction claim is indisputably correct. Although the trial court cited Michigan cases, those cases rested upon and referenced federal constitutional law. As the trial court recognized, personal jurisdiction "is a waivable right . . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). A guilty plea waives any objection to the court having personal jurisdiction over a defendant. *See United States v. Juvenile Male*, 939 F.2d 321, 324 (6th Cir. 1991).

Moreover, the trial court properly applied federal law in rejecting Petitioner's argument that the State of Michigan lacked subject-matter jurisdiction to charge and convict him.

In Michigan, the circuit court is a court of general jurisdiction and has original jurisdiction over all criminal cases involving felonies that occur within its boundaries. *See* MICH. COMP. LAWS § 600.601. Thus, absent some exception, the Kent County Circuit Court clearly had subject-matter jurisdiction over the offense for which Petitioner was charged, which occurred at 3753 Groveland Avenue, SW, Wyoming, Michigan.

Petitioner sweepingly claims that the circuit court lacks jurisdiction from this general rule because he is an Indian and the crime occurred on Indian land. Petitioner has provided factual evidence of neither proposition. In addition, as the trial court recognized, Petitioner's arguments – that the Michigan Territory never became the State of Michigan and that the entire State of Michigan is Indian country – are patently absurd. The state court's rejection of Petitioner's first habeas ground is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

II.     Involuntary Plea

Petitioner contends that the state constructively denied his right to a polygraph examination. As a result, he argues, his guilty plea was involuntary.

In denying Petitioner's motion for relief from judgment, the trial court recited the history of the litigation, as follows:

> In the summer of 2010, the Kent County Prosecutor brought four charges against Defendant Charles Darwin Runion after learning of an alleged sexual assault committed against an eight-year-old child. Mr. Runion's trial was set for January 3, 2011, but the Court adjourned the trial so that Mr. Runion could exercise his right to a polygraph examination prior to trial. See MCL 776.21(5). Despite the adjournment, Mr. Runion chose not to participate in a polygraph examination after he allegedly read an article in the Grand Rapids Press that indicated that the prosecutor would not drop the charges against Mr. Runion even if he passed the polygraph examination.

The Court reconvened to conduct Mr. Runion's trial on January 24, 2011, but after a lengthy discussion about Mr. Runion's decision not to take a polygraph examination, see Plea Hearing Transcript at 3-10, Mr. Runion agreed to a 20 to 30 year sentence, and the Court sentenced Mr. Runion accordingly on March 29, 2011. Subsequently, Mr. Runion filed a motion to withdraw his guilty plea, see MCR 6.310(C), primarily arguing that his plea was involuntary. This argument was based on the notion that the state constructively denied Mr. Runion's right to a polygraph examination by making statements to the press that the prosecutor would pursue charges against him regardless of the results of the polygraph examination. See Motion to Withdraw Guilty Plea. After a hearing, the Court denied the motion to withdraw the guilty plea, and Mr. Runion appealed his case to the Michigan Court of Appeals on the same grounds. The Michigan Court of Appeals denied leave to appeal on May 8, 2012, and Mr. Runion appealed his case to the Michigan Supreme Court, again on the same grounds, but the Michigan Supreme Court denied leave to appeal on September 24, 2012. In a last-ditch effort, Mr. Runion now brings a motion for relief from judgment, see MCR 6.501, *et seq*, arguing again, *inter alia*, that his guilty plea was involuntary because the prosecutor constructively denied his right to a polygraph examination.

(5/13/13 Cir. Ct. Ord., docket #3-7, Page ID##95-96.)  The trial court concluded that, by entering his guilty plea, Petitioner had waived his right to a polygraph examination. *Id.* (citing *People v. New*, 398 N.W.2d 358, 494 (Mich. 1986)).

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Alford*, 400 U.S. at 31 ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under FED. R. CRIM. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*,

201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

Furthermore, in order to find a guilty plea constitutionally valid, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Finally, the defendant must have available the advice of competent counsel.  *Tollett*, 411 U.S. at 267-68;  *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the

nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

Petitioner does not argue that he was incompetent or lacked notice of the offense. He does not dispute that he was advised of the nature of the rights he was waiving and of the consequences of his plea – nor does he contend that he did not understand them.  He does not dispute that he consulted counsel before entering his plea, and he acknowledges that his attorney properly advised him that, by taking the plea, Petitioner could reduce his minimum sentence from 25 to 20 years imprisonment and he could avoid the maximum sentence of life imprisonment. Further, Petitioner does not deny that he was given ample opportunity to take a polygraph examination.[2]  He also acknowledges that he discussed his concerns about the polygraph with the trial judge, prior to making his decision to enter the plea.  (Pet'r's Br., docket 3-1, Page ID##26-27.)

In fact, Petitioner does not even argue that the plea itself was coerced – that he was induced by threats or promises to plead guilty rather than to proceed to trial.  *See Brady*, 397 U.S. at 755;  *Machibroda*, 368 U.S. at 493.  He merely contends that the prosecutor's public statement that she would pursue the charges, regardless of the outcome of Petitioner's polygraph examination, coerced him into waiving his statutory right to a polygraph examination.  Whether Petitioner was

---

[2]Petitioner argues that he had a right to a polygraph examination that was violated by the prosecutor's comments to the media.  Under MICH. COMP. LAWS § 776.21(5), Petitioner had a right under Michigan law to be given a polygraph, if he so requested.  By the statute's own terms, the right is not absolute; it is available only upon a defendant's request. Petitioner, after being given the opportunity, elected not to undergo a polygraph test.  It therefore does not appear that state law was violated.  Regardless, habeas relief is not available to remedy an error of state law.  *See Wilson v. Corcoran*, 131 S. Ct. 13, 14 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson*, 131 S. Ct. at 16 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES).

"coerced" into waiving the polygraph by the prosecutor's remarks, by his fear of what the polygraph examination might show, or by his attorney's recommendations concerning the wisdom of taking a polygraph examination is irrelevant to the sole inquiry before this Court: whether Petitioner's plea was knowingly, voluntarily and understandingly made.  Petitioner utterly fails to make the requisite showing.

As a consequence, Petitioner fails to demonstrate that the state-court's rejection of his claim was either contrary to or an unreasonable application of clearly established Supreme Court precedent.

III.   <u>Right to Withdraw the Plea</u>

In his final claim of relief, Petitioner contends that, because he did not receive a polygraph examination and because the trial court lacked jurisdiction, he should be permitted to withdraw his plea and proceed to trial.

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the state court acted without jurisdiction or the plea was not entered in a knowing and voluntary fashion under the standards set forth by the Supreme Court.  *See, e.g., Hill*, 474 U.S. at 56.  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Inasmuch as the Court has rejected Petitioner's challenges to the trial court's jurisdiction and to the voluntariness of his plea, Petitioner is not entitled to habeas relief.

**<u>Conclusion</u>**

-11-

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this

Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

   The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

   A Judgment and Order consistent with this Opinion will be entered.


Dated:  July 10, 2014      /s/ Janet T. Neff
            Janet T. Neff
            United States District Judge